## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MARK FISH, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | No. 1:09-cv-336-DFH-TAB |
| ) | |
| THOMAS HANLON, ) | |
| ) | |
| Respondent. ) | |

### Entry Discussing Petition for Writ of Habeas Corpus

Petitioner Mark Fish was convicted in an Indiana state court of murder.  For this crime, Fish was sentenced to a fifty-five year term of imprisonment. After unsuccessfully challenging both his conviction and sentence in the state courts, Fish now seeks a writ of habeas corpus. For the reasons explained in this Entry, Fish's petition must be **denied.**

## I.

Fish was convicted in 1996 in the St. Joseph Superior Court with the July, 1995, murder of Barbara J. Osterhouse.  Fish's 1996 murder conviction and sentence were affirmed on direct appeal in *Fish v. State,* 710 N.E.2d 183 (Ind. 1999)(*Fish I*). The Indiana Court of Appeals then affirmed the trial court's denial of post-conviction relief in *Fish v. State,* No. 71A03-0502-PC-88 (Ind.Ct.App. 2005)(*Fish II*). Fish's petition for transfer was denied on January 4, 2006. In addition, Fish received authorization from the Indiana Court of Appeals to file a successive petition. Fish filed his successive petition on November 21, 2005 and moved to withdraw his successive petition on November 17, 2008. According to Fish, his motion to withdraw his successive petition was granted on November 20, 2008. Fish's petition for a writ of habeas corpus was filed on March 11, 2009.

The Indiana Supreme Court set forth the pertinent facts regarding the crime as follows:

> The evidence favorable to the judgment indicates that the defendant and Osterhouse had been involved in a personal relationship, during the course of which Osterhouse repeatedly left the defendant to live with her mother in Tennessee, but always returned to the defendant. In March 1995, following further relationship difficulties, Osterhouse again moved in with her mother. The defendant wrote several letters begging her to return to him. As time progressed, however, his letters changed in tone, and he began threatening Osterhouse with prosecution for drug use during the pregnancy with their child. Among statements in his letters were threatening messages, such as:

"My pain and suffering is over. I believe yours is just about to start." Record at 780. He also wrote to Osterhouse's mother on a pre-printed paper entitled "Gift Certificate from the office of Jack K[e]vorkian, M.D." Record at 790. The defendant filled in the blanks "To *Barb*" and "From *Us.*" On the back of the certificate, he urged Osterhouse's mother: "If you love Barb don't let her come up here next month or ever." *Id.* He also called Sherri Jester, a friend of Osterhouse,and told her that if Osterhouse came home to him, she would go back to Tennessee in a box.

Notwithstanding these communications, Osterhouse returned to live with the defendant in July of 1995. Later that month, Osterhouse's mother visited South Bend. During this visit, some of Osterhouse's friends went to the defendant's house to retrieve Osterhouse and the couple's child so that they could visit with Osterhouse's mother. The defendant and Osterhouse argued about whether she was going to leave him again. Eventually, it appeared that the dispute was resolved, and the defendant agreed to let Osterhouse go, even offering the use of his car for the trip. As Osterhouse and her friends were leaving, the defendant asked Osterhouse to speak to him privately, and she re-entered the house. The friends proceeded to the car with Osterhouse's daughter. The defendant and Osterhouse were heard arguing again. Then Osterhouse's friends, who were waiting at the car, heard a loud sound followed by the sound of a door slamming. When the friends went to the front door to investigate, they discovered that the door could not be opened. On further inspection, the friend's [*sic*] could see Osterhouse's body lying against the door and blood all around her. Although they had previously seen the defendant in the house with Osterhouse, the defendant was gone by the time they had reached the door. They summoned help, but Osterhouse was dead by the time the emergency medical technicians arrived, moved the body away from the door, and entered the home. The pathologist determined that Osterhouse died from a single gunshot wound to the head. The shot was fired at a distance of one to twelve inches from the head, and there was no soot or gunpowder on either of Osterhouse's hands.

The day after Osterhouse's death, the defendant called Sherri Jester again, this time asking how she liked her friend now and stating that he had a surprise for Jester. Approximately two days after this phone call, the defendant, who had changed his appearance by cutting his hair, shaving his beard, and removing his glasses, told his friend, Jack Hyatt, the location of a gun he had placed in a bag and hidden in the woods. When the defendant was later arrested, Hyatt informed the police about the location of the gun, and, using those directions, the police recovered a bag containing a gun and several other items. Although the police could obtain no identifiable fingerprints from the gun, they did find the defendant's fingerprints on other items in the bag and determined that the gun in the bag had fired the bullet that killed Osterhouse.

*Fish I,* 710 N.E.2d at 184-85.

2

## II.

### A.

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). See *Conner v. McBride,* 375 F.3d 643, 649 (7th Cir. 2004). Review of Fish's habeas action is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lambert v. McBride,* 365 F.3d 557, 561 (7th Cir. 2004). Under the AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent, or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2); *Early v. Packer,* 537 U.S. 3, 7-8 (2003); *Lambert,* 365 F.3d at 561.

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton,* 544 U.S. 131, 141 (2005) (internal citations omitted); see also *Badelle v. Correll,* 452 F.3d 648, 653 (7th Cir. 2006). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)).

Factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Werts v. Vaughn,* 228 F.3d 178, 196 (3d Cir. 2000) (*citing* 28 U.S.C. § 2254(e)(1)). This extends, of course, to findings of fact made in the course of appellate decisions. See *Baddelle v. Correll,* 452 F.3d 648, 661, 659 (7th Cir. 2006) ("On habeas review, we presume that the factual findings of the state appellate court are correct in the absence of clear and convincing evidence to the contrary.")(citing 28 U.S.C. § 2254(e)(1); *Ruvalcaba v. Chandler,* 416 F.3d 555, 559 (7th Cir. 2005)). This is a "rigorous burden of proof." *Sanchez v. Gilmore,* 189 F.3d 619, 623 (7th Cir. 1999). See also *Green v. White,* 232 F.3d 671, 672 n.3 (9th Cir. 2000) (although "the relationship between § 2254(d)(2) and § 2254(e)(1) is not entirely clear . . . the standard of review appears to be clear error under both statutory provisions.").

### B.

In addition to the substantive standard set out above,"habeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court." *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 14 (1992) (O'Connor, J., dissenting)

(internal citations omitted). "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72 (1977)). The purpose of the rules of procedural default is to "afford[ ] to the state courts an opportunity to correct a constitutional violation." *Duckworth v. Serrano*, 454 U.S. 1, 4 (1981).

Procedural default occurs either: (1) when a petitioner failed to exhaust state remedies and the court to which he would have been permitted to present his claims would now find such claims procedurally barred, *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1990); or (2) "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.,* at 729. "Cause" for a procedural default exists if the petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray,* 477 U.S. at 488. Prejudice is demonstrated by showing that the errors worked to the petitioner's "actual and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170 (1982).

### III.

Fish's claims are: (1) insufficiency of the evidence; (2) ineffective assistance of trial counsel; (3) ineffective assistance of appellate counsel; (4) prosecutorial misconduct; and (5) actual innocence.

### IV.

### A.

*Insufficiency of the evidence.* Fish claims that there is insufficient evidence to support his murder conviction. Under the Due Process Clause of the Fourteenth Amendment, a defendant may be convicted and punished under a state's criminal law only when all elements required by state law are proved beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364 (1970) ("Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

The clearly established federal law which applies to the petitioners' claims that the evidence is insufficient to sustain their convictions is that set out in *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson,* at 319, 99 S. Ct. 2781, holds that due process is satisfied if, viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

4

*Johnson v. Bett,* 349 F.3d 1030, 1034 (7th Cir. 2003). A federal habeas court is not entitled to reweigh the evidence under the guise of assessing its sufficiency. *Jackson,* 443 U.S. at 319. On the contrary, a federal habeas corpus court must presume that the jury resolved all reasonable inferences in the State's favor. *Id.*, 443 U.S. at 326; *Willard v. Pearson,* 823 F.2d 1141, 1150 (7th Cir. 1987).

The evidence cited by the Indiana Supreme Court, and fairly supported by the evidence at trial, included the following: Osterhouse's friends first heard Fish and Osterhouse arguing, then a loud sound followed by the sound of a door slamming. When Osterhouse's friends went to the front door to investigate, they could not open the door; they also saw Osterhouse's body lying against the door and blood all around her. They had also seen Fish inside with Osterhouse, although he was gone by the time they had reached the door. The pathologist determined that Osterhouse died from a single gunshot wound to the head. The shot was fired at a distance of one to twelve inches from the head, and there was no soot or gunpowder on Osterhouse's hands. Approximately three days after Osterhouse's death, Fish told his friend the location of a gun he had placed in a bag and hidden in the woods. When Fish was later arrested, Fish's friend informed the police about the location of the gun, and, using those directions, the police recovered a bag containing a gun and several other items. The police found Fish's fingerprints on other items in the bag besides the gun and determined that the gun in the bag had fired the bullet that killed Osterhouse.

Fish's argument that the evidence showed only his presence at the scene (which of course would not be a sufficient basis on which to convict him), that he had a possible reason for and opportunity to shoot Osterhouse, that he and Osterhouse "may have" quarreled after Osterhouse's friends left the house, and that he may have fled with the gun after the victim was shot rests on his view that no rational jury could have concluded that he knowingly killed Osterhouse. The only appropriate inquiry for this Court under *Jackson*

is whether, assuming the jury resolved all disputes in the state's favor and drew all inferences from that evidence, it would have been rational to convict. Not whether we would convict, but whether thoughtful people could convict.

*Branion v. Gramly,* 855 F.2d 1256, 1266 (7th Cir. 1988).  Under the *Jackson* standard, the evidence in this case was certainly sufficient to support the elements to support a murder conviction. Fish's challenge to the sufficiency of the evidence, therefore fails.

## B.

*Ineffective assistance of trial counsel.* Fish claims that his trial counsel was ineffective. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial."*Strickland v. Washington,* 466 U.S. 668, 684 (1984). For a petitioner to establish that "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense. *Strickland,* 466 U.S. at 687.

With respect to the first prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (quoting *Strickland,* 466 U.S. at 688). In addition, the performance of counsel under *Strickland* should be evaluated from counsel's perspective at that time, making every effort to "eliminate the distorting effects of hindsight." *Id.* at 523 (quoting 466 U.S. at 688); see also *Kokoraleis v. Gilmore,* 131 F .3d 692, 696 (7th Cir. 1997).

With respect to the prejudice requirement, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694; see also *Benefiel v. Davis,* 357 F.3d 655, 661 (7th Cir. 2004).

The foregoing outlines the straightforward features of *Strickland's* two-prong test. In the context of a case such as Fish presents, however, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") raises the bar in this setting, for it has been noted:

> The bar for establishing that a state court's application of the *Strickland* standard was "unreasonable" is a high one: we have stated on prior occasion that "'*only a clear error* in applying *Strickland* would support a writ of habeas corpus,'" *Dixon v. Snyder,* 266 F.3d 693, 700-01 (7th Cir. 2001) (quoting *Holman v. Gilmore,* 126 F.3d 876, 882 (7th Cir. 1997)), because "*Strickland* calls for inquiry into degrees," thereby "add[ing] a layer of respect for a state court's application of the legal standard." *Whitehead v. Cowan,* 263 F.3d 708, 731 (7th Cir. 2001) (emphasis added). Accordingly, this Court *is obligated to affirm the district court's decision to deny the writ, so long as the Wisconsin Court of Appeals* "*t[ook] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions.*" *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000) (emphasis added).

*Murrell v. Frank,* 332 F.3d 1102, 1111-12 (7th Cir. 2003).

The Indiana Court of Appeals correctly recognized the *Strickland* standard, noting each of its two prongs. *Fish II,* at 6-7.

**!**	Fish claims that a pretrial conflict of interest existed because John Hosinski knew both him and Osterhouse. The federal constitutional right to effective assistance of counsel necessarily includes representation that is free from conflicts of interest. *Wood v. Georgia,* 450 U.S. 261, 271 (1981). To establish a violation of the Sixth Amendment due to a conflict, a defendant who failed to raise the objection at trial must demonstrate that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980). The Supreme Court modified the standard for ineffective assistance of counsel based on a conflict of interest in *Mickens v. Taylor*, 535 U.S. 162 (2002). In order to prevail under the modified standard, Fish must establish that

6

an actual conflict of interest adversely affected his attorney's performance. *Id.* at 174. An actual conflict exists when an attorney actively represents incompatible interests; it is more than a "mere theoretical division of loyalties." *Id.* at 171. "The premise of a defendant's claim that he was denied conflict-free assistance . . . must be that his lawyer would have done something differently if there was no conflict." *Cates v. Superintendent, Indiana Youth Center,* 981 F.2d 949, 955 (7th Cir. 1992); *see Sanders v. Ratelle,* 21 F.3d 1446, 1452 (9th Cir. 1994) (reviewing court "must examine the record to discern whether the attorney's behavior seems to have been influenced by the suggested conduct").

The Indiana Court of Appeals found that no actual conflict of interest existed and "[a]t best, [Fish] has shown a mere possiblity of conflict, arising from Hosinski's social acquaintance with Osterhouse. Moreover, assuming a potential conflict did exist, Fish has failed to show that such conflict adversely affected Hosinski's performance in his pre-trial representation." *Fish II*, at 10. Fish has not shown that his representation resulted in an actual conflict. For this reason, therefore, Fish is not entitled to federal habeas relief based on his claim that he was denied his Sixth Amendment right to conflict-free representation by Mr. Hosinski.

❗ Fish claims that his second trial counsel, Joseph Rubin, failed to apprise Fish of an available plea offer.   The standard adopted in *Strickland* is equally applicable to guilty pleas. *Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985). Failure to inform a client of a plea offer is a serious enough error to satisfy the performance prong of *Strickland. See United States v. Blaylock*, 20 F.3d 1458, 1465-66 (9th Cir. 1994) (collecting cases from several circuits, including *Johnson v. Duckworth,* 793 F.2d 898, 900-02 (7th Cir. 1986). However, the Indiana Court of Appeals determined that based on two letters from Rubin and a letter from Fish, both to the prosecuting attorney, Rubin clearly communicated with Fish regarding the State's plea offers, and therefore, Fish has not proven that Rubin failed to convey to Fish the State's oral plea offer. *Fish II*, at 12.

Notwithstanding the deficient performance prong of *Strickland,* to prevail on this claim Fish must also show prejudice. Here, Fish must show that there is a reasonable probability that, but for counsel's advice, Fish would have accepted the plea. *Toro v. Fairman,* 940 F.2d 1065, 1068 (7th Cir. 1991).  The Indiana Court of Appeals recognized this and concluded that prejudice had not been shown because based on Fish's letter to the prosecutor, he was "unwilling to accept *any* plea offer for a crime he purportedly did not commit." *Fish II*, at 12 (emphasis in original). This result was not an objectively unreasonable application of *Strickland's* prejudice prong, and hence will not support relief under § 2254(d)(1).

❗ Fish claims that his third trial counsel, Thomas Strickler, rendered ineffective assistance by: (1) failing to present witnesses and thereby abandoning a viable defense; (2) refusing to allow Fish to testify; (3) eliciting and repeating damaging testimony during Sherri Jester's cross-examination; (4)  failing to impeach Jester regarding a brain injury; (5) failing to use pictures in Fish's defense to show that he

changed his appearance before the crime occurred and failing to address the argument that Fish showed consciousness of guilt by changing his appearance and fleeing; (6) failing to object or adequately impeach testimony regarding the gunshot residue; (7) failing to seek a limiting instruction on "flight"; (9) failing to object to admission of a legal pad and letters written by Fish; and (10) abandoning all viable defenses. The Indiana Court of Appeals explained that Fish's failure to introduce the trial transcript into evidence at the post-conviction hearing resulted in a "virtually impossible" examination of counsel's performance as a whole and therefore, Fish did not establish ineffective assistance of trial counsel. *Fish II*, at 14. The Indiana Court of Appeals further explained:

> Moreover, even assuming deficient performance on the part of Strickler, we note that Fish has failed to show a reasonable probability that, but for counsel's errors, the outcome of his trial would have been different. A synopsis of the facts, as determined by our Supreme Court, reveals that Osterhouse died of a gunshot wound to the left side of her head. Prior to her death, witnesses heard Fish and Osterhouse argue, followed by a loud sound. When the witnesses went to investigate the noise, which came from inside the house, they saw that Osterhouse was dead and noticed that Fish had fled the scene. Crime scene investigators later found no gunshot residue on Osterhouse's hands. The evidence further demonstrates that, after the shooting, Fish told a friend the location of the handgun that had been used to shoot Osterhouse. Based upon the friend's information, police officers recovered a bag containing the handgun, along with other items that bore Fish's fingerprints. In light of this evidence, we find no reasonable probability that the alleged errors affected the jury's verdict.

*Id.* Fish has not shown clear error in the appellate court's application of the *Strickland* standard, and therefore his ineffective assistance of trial counsel claims fail to support federal habeas relief.

## C.

*Ineffective assistance of appellate counsel.* The standard for judging a claim of ineffective assistance of counsel is the same for both trial and appellate lawyers. *Matire v. Wainwright,* 811 F.2d 1430, 1435 (11th Cir. 1987). Where a defendant claims that counsel failed to raise the correct issues on appeal, the question is whether appellate counsel failed to raise a significant and obvious issue without a legitimate strategic purpose. *Franklin v. Gilmore,* 188 F.3d 877, 884 (7th Cir. 1999). Thus, the court has examined the "trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mason v. Hanks,* 97 F.3d 887, 893 (7th Cir. 1996).

Fish's claim of ineffective assistance of appellate counsel was one of several specifications of ineffective assistance in *Fish II*. His contention in that proceeding was that his attorney failed to raise ineffective assistance of trial counsel claims. *Fish II*, at 16. The Indiana Court of Appeals explained that, "because we have previously determined that trial counsel's performance was effective, we find no ineffectiveness on the part of appellate counsel for failing to raise these issues." *Id*.; see *Schaff v. Snyder*, 190 F.3d 513, 527 (7th Cir. 1999)("Because the underlying claim that trial defense counsel was constitutionally ineffective was at best a weak one, we cannot say that appellate defense counsel was constitutionally ineffective in failing to raise it on direct appeal."). Similarly, there is not a reasonable probability that, had the ineffective assistance of trial counsel claims been included in Fish's direct appeal, his conviction would not have been affirmed. *Mason*, 97 F.3d at 893 (a petitioner demonstrates the requisite prejudice only when appellate counsel fails to raise an issue that "may have resulted in a reversal of the conviction, or an order for a new trial"). Accordingly, Fish's appellate counsel were not ineffective in failing to include it.

"[O]nly a clear error in applying *Strickland's* standard would support a writ of habeas corpus." *Holman*, 126 F.3d at 882. The Indiana Court of Appeals' analysis of Fish's ineffective assistance of counsel claims properly applied the *Strickland* standard and produced a decision that was more than "minimally consistent with the facts and circumstances of the case." That decision, therefore, will not support the award of federal habeas relief.

### D.

Fish also raises a claim of prosecutorial misconduct. However, this claim is procedurally defaulted. Fish failed to present his prosecutorial misconduct claim on direct appeal in a procedurally adequate manner under Indiana state law. The Indiana Court of Appeals' rejection of this claim in the post-conviction action constitutes an independent and adequate state ground. See *Fish II*, at 2, n.2. "A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time-- as state rules define those courts, ways, and times. Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review." *Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2003) (citing cases). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

### E.

Fish's final claim is that his conviction constitutes a fundamental miscarriage of justice. The fundamental miscarriage of justice exception is an exception to the doctrine of procedural default, not a freestanding claim of a constitutionally tainted trial. In *Schlup v. Delo*, 513 U.S. 298, 327 (1995), the Supreme Court held that to establish a "fundamental miscarriage of justice," a petitioner must demonstrate that "a constitutional violation has

probably resulted in the conviction of one who is actually innocent." (quoting *Murray v. Carrier,* 477 U.S. at 496). And, in order to establish a claim of actual innocence "he must convince the court that no reasonable juror would have found him guilty but for the error(s) allegedly committed by the state court." *Perruquet v. Briley,* 390 F.3d 505, 515 (7th Cir. 2004) (citing *Schlup*). Fish offers no evidence of his actual innocence here, and the court discerns no basis on which such an argument could be made.

### Conclusion

Fish's conviction withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it. See *Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law").[1] As the foregoing discussion demonstrates, this court's view is that he received all that the Constitution requires.

This court has carefully reviewed the state record in light of Fish's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. "A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir. 1997). No such established rules entitle Fish to relief in this case. Fish's petition for a writ of habeas corpus is therefore **denied.** Judgment consistent with this Entry shall now issue.

So ordered.

_David F. Hamilton_

Date: ___September 14, 2009___   DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

---

[1] Obviously, this is not a presumption related to the AEDPA, but is "the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke v. Raley,* 506 U.S. at 29 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 468 (1938)).